1              UNITED STATES BANKRUPTCY COURT
              EASTERN DISTRICT OF NEW YORK
2

3   --------------------------------X
                                    :
4   In re:                          :    11-43785 (CEC)
                                    :
5       NEW YORK SPOT, INC.,        :    271 Cadman Plaza East
                                    :    Brooklyn, New York
6                    Debtor.        :
    --------------------------------X    September 14, 2011
7
    In re:                          :
8                                   :
        NEW YORK DOUBLE, INC.,      :    11-44051 (CEC)
9                                   :
                     Debtor.        :
10  --------------------------------X
                                    :
11  In re:                          :
                                    :    09-48910 (CEC)
12      MARTENSE NEW YORK, INC.,    :
                                    :
13                   Debtor.        :
    --------------------------------X
14                                  :
    In re:                          :
15                                  :    11-45116 (CEC)
        SHAKER GARDENS, INC.,       :
16                                  :
                     Debtor.        :
17  --------------------------------X

18           TRANSCRIPT OF (17) SCHEDULING ORDER FOR
       HEARING ON DISCLOSURE STATEMENT; (12) ORDER FOR DEBTOR TO
19    FILE PROPOSED PLAN, DISCLOSURE STATEMENT, AND MOTION SEEKING
     APPROVAL FOR DISCLOSURE STATEMENT; (5) ORDER SCHEDULING STATUS
20    CONFERENCE FOR APPROPRIATE SCHEDULE; (15) STIPULATION THAT
        DEBTOR SHALL FILE A CHAPTER 11 PLAN, DISCLOSURE STATEMENT
21    AND MOTION TO APPROVE DISCLOSURE STATEMENT; (21) NOTICE OF
        HEARING ON DISCLOSURE STATEMENT; (10) MOTION TO APPOINT
22       TRUSTEE OR EXCUSE THE RECEIVERS COMPLIANCE WITH
                     11 USC SECTION 543
23           BEFORE THE HONORABLE CARLA E. CRAIG
              UNITED STATES CHIEF BANKRUPTCY JUDGE

24

25

    Proceedings recorded by electronic sound recording, transcript
    produced by transcription service

2

APPEARANCES:


APPEARANCES:

For New York Spot:        TED DONOVAN, ESQ.
                          Goldberg, Weprin, Finkel,
                           Goldstein, LLP
                          1501 Broadway
                          New York, New York 10036


 For West 22nd, LLC:      MARK A FRANKEL, ESQ.
                          Backenroth, Frankel & Krinsky, LLP
                          489 Fifth Avenue, 28th Floor
                          New York, NY 10017

For Carver Federal        FRANK DELL'AMORE, ESQ.
Savings Bank:             Jaspan Schlesinger, LLP
                          300 Garden City Plaza
                          Garden City, NY 11530

For the US Trustee:       WILLIAM CURTIN, ESQ.
                          United States Department of Justice
                          271 Cadman Plaza East, Suite 4529
                          Brooklyn, NY 11201

For Martense NY, Inc:     NEAL M. ROSENBLOOM, ESQ.
                          Goldberg, Weprin, Finkel,
                           Goldstein, LLP
                          1501 Broadway
                          New York, NY 10036

For Prospective Buyer:    BURTON WESTON, ESQ.
                          Garfunkel Wild, PC
                          111 Great Neck Road
                          Great Neck, NY 11021


Court Transcriber:        MARY GRECO
                          TypeWrite Word Processing Service
                          211 N. Milton Road
                          Saratoga Springs, New York  12866

1

1            THE COURT:  I'm getting ready to call all of the

2    Nelkenbaum related cases, so you can all come up here for that

3    and we'll take them I guess in the order that they appear on

4    the calendar.

5            THE CLERK:  This is New York Spot first.  Yeah, New

6    York Spot, number 19 and 20.  Can we have appearances first,

7    please?

8            MR. DONOVAN:  Ted Donovan; Goldberg, Weprin, Finkel,

9    Goldstein for the debtor.  Mr. Nelkenbaum is here as the

10    principal of the debtor.

11            MR. FRANKEL:  Mark Frankel; Backenroth, Frankel and

12    Krinsky, attorneys for West 22nd, LLC in the New York Spot

13    Case.

14            MR. LANDSMAN:  Andrew Landsman, member of West 22nd,

15    LLC.

16            MR. DELL'AMORE:  Frank Dell'Amore, counsel for Carver

17    Federal Savings Bank in the Shaker Gardens case.

18            MR. CURTIN:  William Curtin for the United States

19    Trustee, Your Honor, appearing in all four cases.

20            MR. ROSENBLOOM:  Neal Rosenbloom; Goldberg, Weprin,

21    Finkel, Goldstein, appearing in the Martense case.

22            MR. WESTON:  Burton Weston; Garfunkel Wild, PC on

23    behalf of the prospective purchaser in the Martense case.

24            THE COURT:  The prospective purchaser of the

25    property?

1          MR. WESTON:  Yes.

2          THE COURT:  Is there anyone here for the lender in

3    Martense?

4          MR. ROSENBLOOM:  No, Your Honor, but I have spoken

5    with the lender.  Since -- should we wait until Your Honor

6    calls the case?

7          THE COURT:  Yes.  That's fine.  Let's start with New

8    York Spot.

9          MR. DONOVAN:  Your Honor, in accordance with your

10   order we have filed a plan and disclosure statement which --

11   and it's essentially I can do New York Spot and Shaker Gardens

12   relatively the same way.  We have a deal with the lender in New

13   York Spot.  We have vacated the stay.  The receiver is still

14   in.  They are proceeding in State Court.  Meantime, the plan

15   provides essentially for us to try to market and sell the

16   property here in Bankruptcy Court while they're proceeding in

17   State Court on the theory that we'll be able to get this done

18   much more quickly than they will and then they would have the

19   right to credit bid their lien and we will pay those same

20   priority creditors that they would have to pay in any event in

21   a foreclosure sale because it's basically taxes that come ahead

22   of them.

23         THE COURT:  In New York Spot have you changed your

24   deal?  Have you had some conversation with Mr. Frankel?

25         MR. FRANKEL:  I think Mr. Donovan misspoke when he

1  said the plan.  That's the deal.  The plan has to be amended to

2  reflect the deal.

3        THE COURT:  So you've settled your objections?

4        MR. FRANKEL:  In the hallway today we did, Your

5  Honor.

6        THE COURT:  Okay.

7        MR. DONOVAN:  Your Honor, that was what we had

8  intended.  It's not how it came out when we finished the

9  papers.

10        THE COURT:  Okay.  So let me understand this.  You

11  have a property that is probably undersecured; correct?

12        MR. DONOVAN:  Yes.

13        THE COURT:  And so what you're going to do is sell it

14  in a 363 sale?

15        MR. DONOVAN:  Yes.  And they will have the right to

16  credit bid and --

17        THE COURT:  And you're not restricting the right to

18  credit bid to any particular amount?

19        MR. DONOVAN:  Well, Your Honor, what we talked about

20  is first of all reserving our right to challenge the amount of

21  their claim.  Secondly, we will allow them to credit bid up to

22  the amount of their claim but what we're going to do is because

23  the property is probably unsecured we don't want to have a

24  credit bid number that starts so high nobody else would come in

25  and bid, so we're going to work out essentially a first minimum

1  bid but they would have the right to bid higher than that if

2  anybody else comes in and bids more.  So an opening bid, just

3  for an example, would be $1.7 and they would have the right to

4  bid up to the full amount of the claim of $2 million.

5         THE COURT:  Okay.  So you're not restricting their

6  right.

7         MR. DONOVAN:  We're not restricting them.  And the

8  plan as it was originally written did restrict it.  That's the

9  major concession that we're making there.  In the meantime,

10  they have the right to continue with their foreclosure.  The US

11  Trustee has made a motion --

12         THE COURT:  What is the purpose of this?

13         MR. DONOVAN:  The purpose of this, Your Honor, is

14  because we think that we can sell the property for a -- we have

15  a better chance of marketing and selling the property here in

16  Bankruptcy Court than we ever do in a foreclosure where

17  typically nobody comes and essentially the debtor has no role.

18  And so we think the best chance we have to try to sell and get

19  more than the lien is to go ahead with this.  And because we're

20  already this far into the case procedurally, it's not that much

21  more to do it.

22         THE COURT:  How much undersecured is the lender?  I

23  guess since you don't have a valuation of the property and you

24  also don't have an agreement on the amount of the claim I guess

25  that's a hard question.

1          MR. DONOVAN:  Those are questions I can't answer,

2   Your Honor.  I believe in this instance it's fairly close.

3   What we think the value is is fairly close to what their claim

4   is.  Actually, I think it's probably the case in both this and

5   Shaker.  But we think that this is the best chance that we have

6   to try to salvage something here in terms of maximizing the

7   return on the property.

8          THE COURT:  Who comes -- and there is a second

9   mortgage on this property; isn't there?

10          MR. CURTIN:  Yes, Your Honor.

11          MR. DONOVAN:  There is a second mortgage.  The second

12   mortgage again is a -- this is a friendly party who loaned

13   money to Mr. Nelkenbaum's various different entities and took

14   liens against all those different entities and he's willing to

15   work with us whatever we need to do.  If there's money for him,

16   great.  If there isn't money for him, he's not going to stand

17   in our way.

18          THE COURT:  Are there unsecured claims?

19          MR. DONOVAN:  Very small.

20          THE COURT:  Tax claims?

21          MR. DONOVAN:  Yeah, there are tax claims that we have

22   to deal with.  And one of the things that the US Trustee has

23   asked for that we are working on and we'll have by the end of

24   this month are tax returns for all of Mr. Nelkenbaum's

25   entities.

1          THE COURT:  Tax claims that, any tax claims that are

2    secured?

3          MR. DONOVAN:  One moment, Your Honor.

4          THE COURT:  I assume that you're going to dismiss

5    this case once you've sold the property then, since there won't

6    be anything to distribute.

7          MR. DONOVAN:  Well, the idea, Your Honor, would be to

8    confirm a plan and distribute the money as we have it to

9    distribute.

10          THE COURT:  The likely outcome is that either it's

11    going to be bought by the secured creditor or they're going to

12    -- all the distributions are going to go to them; correct?  So

13    what's the purpose of doing this plan?  You think you can avoid

14    the property and transfer taxes that way?

15          MR. DONOVAN:  It would -- any plan --

16          THE COURT:  And who's going to be your peer class

17    voting for the plan?  I guess it depends on if the secured

18    creditor is paid in full.

19          MR. DONOVAN:  Well, the idea is that the -- since we

20    have this second mortgage that is --

21          THE COURT:  I guess he would be --

22          MR. DONOVAN:  -- effectively going to get

23    [unintelligible] that they would be unsecured and they would

24    vote in favor of the plan.  And Your Honor, there are some

25    secured claims that are filed in this case, tax claims, but

1  they are estimated claims based on there not being filed

2  returns.  When the returns are filed, we will --

3          THE COURT:  But those are, excuse me, those are

4  secured claims?

5          MR. DONOVAN:  I believe some of them are, Your Honor.

6  The priority claims, I believe at least one of them was filed

7  as a secured claim.  But in any event, we'll sort all of those

8  things out in the next few weeks when we get the tax returns.

9          THE COURT:  But they could -- I guess a secured

10  creditor could try to block you from selling the property if

11  you're not going to get enough to pay them in full and they

12  would come after the lienholder; correct?  If these are income

13  tax claims; right?  These are not property tax claims?

14          MR. DONOVAN:  That's right.  They are property tax

15  claims as well.  Sullivan County I believe filed a proof of

16  claim appearance.  I'm sorry, [inaudible] County filed a claim

17  here.

18          THE COURT:  Does this relate somehow to a personal

19  guarantee?

20          MR. DONOVAN:  There are personal guarantees, Your

21  Honor, on all of Mr. Nelkenbaum's properties.

22          THE COURT:  You're not --

23          MR. DONOVAN:  At the moment they have not agreed to

24  any release of the guarantee if we don't get enough to pay it

25  off although we're still trying to talk them into that.

1          THE COURT:  Which creditors hold the personal

2    guarantees?

3          MR. DELL'AMORE:  Carver has a personal --

4          MR. DONOVAN:  Carver does and Shaker and the second

5    lienholder does.

6          THE COURT:  Okay.

7          MR. DONOVAN:  But not the first in New York Spot.

8          THE COURT:  The plan's not going to purport to --

9          MR. DONOVAN:  To grant the -- no.

10          THE COURT:  Releases of personal guarantees?

11          MR. DONOVAN:  No.

12          THE COURT:  Okay.

13          MR. DONOVAN:  Not unless though they agree to it.

14          THE COURT:  I'm still sort of scratching my head

15    about why you're doing this.

16          MR. DONOVAN:  As I said, Your Honor, we're trying to

17    maximize the return if we can.  We just feel we can do a better

18    job of trying to get competing bids than could happen in a

19    foreclosure sale.

20          THE COURT:  All right.  And nobody has a problem with

21    this at this point?

22          MR. CURTIN:  Well, Your Honor, William Curtin for the

23    United States Trustee.  I'm not comfortable saying I don't have

24    a problem with it.  I mean I'm hearing about it for the first

25    time so at the very least I think the hearing needs to be

1  adjourned, the papers need to be amended and we'll look at it

2  and see what they propose because I share Your Honor's

3  sentiment that what's the point?  As Mr. Donovan mentioned, we

4  did file a motion to dismiss the case that's returnable in

5  early October.  And there are two points I'd like to make that

6  I think are relevant to the inquiry here.  One has already been

7  discussed, that is that there's no tax returns so we have no

8  idea what the tax claims are, and two, that there's no bar

9  date.  So we really have no idea what any of the claims are.

10  So --

11          THE COURT:  You need a bar date.

12          MR. DONOVAN:  Yes, Your Honor.

13          THE COURT:  Are there bar dates in any of these

14  cases?

15          MR. CURTIN:  Only in Martense.

16          MR. DONOVAN:  Martense.  Your Honor, the trustee's

17  motion to dismiss is returnable on October 5th.  Mr. Frankel

18  had raised in his objection a number of cogent comments about

19  the need to provide some additional information in the

20  disclosure statement and we need to fix the plan so that it

21  runs properly.  We need to get the bar dates done.  And my idea

22  was that having now spoken to them and gotten the information

23  that they're willing to at least take a look at what we come up

24  with, my idea was if we adjourn everything that's on today to

25  October 5th, we'll come back on October 5th and we'll have all

1  our ducks in a row and we can approve the disclosure statement

2  and Mr. Curtin's objections will hopefully have been resolved

3  or they won't be resolved and we'll have to deal with

4  everything at that point with a motion to dismiss each of the

5  cases on the table.

6          THE COURT:  I guess you won't have a bar --

7          MR. DONOVAN:  We'll have a bar date by then.

8          THE COURT:  -- bar date yet, but what I will say is

9  that if you're going to proceed in this fashion I'd like you to

10  come in with a bid procedures order and put this on for sale.

11  I think you should be -- assuming that you're going to sell it

12  before the end of -- before the middle of November, you know.

13  So this case needs to be brought to a conclusion one way or

14  another.

15          MR. DONOVAN:  Well again, Your Honor, my hope was we

16  could approve the disclosure statements on October 5th and that

17  would allow us to confirm and have sales by the middle of

18  November.  So we should be all right as long as I can get all

19  these ducks in a row by then.

20          THE COURT:  So were you going to have the auction on

21  the date of the plan confirmation?

22          MR. DONOVAN:  No, it would be after confirmation but

23  the idea would be --

24          THE COURT:  The auction would be after confirmation?

25          MR. DONOVAN:  Well, I think under Piccadilly it has

1    to be but we can work that out among the attorneys and the US

2    Trustee.  We'll talk and see what makes the most sense.

3              THE COURT:  Okay.  Well, I guess as long as you had -

4    - if you had everything teed up and ready in the plan, not just

5    I confirm a plan that says go sell the property whenever you

6    feel like it.

7              MR. DONOVAN:  No, no, no, Your Honor.  I think we'll

8    be a little more specific than that.

9              THE COURT:  Yes.  Right.  Okay.

10             MR. DONOVAN:  Now, there is one thing I wanted to

11   bring to the Court's attention.  The receiver is in place in

12   both cases, New York Spot and Shaker.  The receiver agreement

13   we had with Shaker was that his retention would continue to

14   today by stipulation.  We've agreed that we're going to submit

15   an order continuing that through October 5th to that hearing.

16   The receiver in Shaker has given us late last night the

17   information we need to file operating reports.  I have not

18   gotten that from the receiver in New York Spot.  Mr. Frankel

19   and I have talked and he's going to help me work with the

20   receiver to get the information so we can bring all the

21   operating reports current.  Our operating is zero but obviously

22   numbers have to be given to the Court and Mr. Frankel is going

23   to work with us to get that information.

24             THE COURT:  Okay.

25             MR. DONOVAN:  Now Your Honor, on New York Double --

1           THE COURT:  Well, maybe we should turn to the one --

2    the Shaker Heights.

3           MR. DONOVAN:  Shaker Gardens?

4           THE COURT:  Shaker Gardens case since it's --

5           MR. CURTIN:  Your Honor, can I just make one more

6    comment before we leave New York Spot?  I just want to be clear

7    that we're not -- we raised some technical issues as well as

8    some substantive issues in the motion and nothing I've heard

9    today really has changed my mind that this is a proper use of

10   Chapter 11.  My mind may change at some point but we at this

11   point intend to go forward with the motion even if the

12   operating reports are filed and the fees are paid and the tax

13   returns are provided as was pointed out in the motion.  So I

14   just want everyone to be clear that we're intending to go

15   forward on the motion to dismiss unless something changes.

16          MR. DONOVAN:  That was clear, Your Honor.

17          THE COURT:  Okay.  Well, shall we talk about Shaker

18   Gardens which is the other case?  Do you have sales in each of

19   these cases?

20          MR. DONOVAN:  Yes.  It's essentially the same plan

21   and the same concept.

22          THE CLERK:  Shaker Gardens [inaudible].

23          MR. DONOVAN:  And as I said, we've agreed and will

24   submit within the next day or two a stipulation that continues

25   the receiver in place through October 5th.

1          THE COURT:  And you're going to be amending that plan

2    as well; are you not?

3          MR. DONOVAN:  Exactly, exactly.

4          MR. DELL'AMORE:  I would like to clarify for the

5    record a deal may have been reached in the other case, a deal

6    has not been reached in Shaker Gardens.  And unless there's

7    substantial changes to the plan, it's not going to be reached.

8          MR. DONOVAN:  All right --

9          MR. DELL'AMORE:  Aside from the credit bid issue,

10   which is an issue in our case as well, I understand now they're

11   not trying to limit the credit bid.  That was one issue.

12          Another issue that we had is that it assumed, because

13   we didn't see any other reason for the filing, we assumed that

14   they were trying to avoid personal liability in that case as

15   well.  Again, something is being said differently today, but

16   moreover in Shaker the plan is seeking to have Carver pay the

17   administrative expenses for priority claims which for the

18   record are $6 million, a claim filed by the IRS.  Granted, that

19   may change but as of right now there's a $6.8 million --

20          THE COURT:  These are the debtor's -- these are not

21   claims that are liens?

22          MR. DELL'AMORE:  Correct.

23          THE COURT:  These are --

24          MR. DELL'AMORE:  They're the attorney fees, they're

25   the priority claims, and they're the quarterly fees that

1  they're looking to have paid.

2          MR. DONOVAN:  And Your Honor, I understand what he's

3  saying and --

4          THE COURT:  That's not going to happen, Mr. Donovan.

5          MR. DONOVAN:  Your Honor --

6          THE COURT:  Unless you get --

7          MR. CURTIN:  Your Honor, this whole plan is based on

8  that premise, Your Honor, about this confirmation fund so --

9          THE COURT:  The plan didn't make a lot of sense to me

10 but it's -- again, this debt structure is similar; is it not?

11 You have a secured claim which exceeds the value of the

12 property we think and you have the same second lien; correct?

13         MR. DONOVAN:  I believe so, Your Honor.

14         THE COURT:  And these other unsecured creditors that

15 are also business debts that were extended to Mr. Nelkenbaum;

16 correct?

17         MR. DONOVAN:  Yes.

18         MR. CURTIN:  Your Honor, the difference here though

19 is that we have a $5 million at least, well $5.5 million

20 priority claim to the IRS.  That may go down but I doubt it's

21 going to go away completely.

22         THE COURT:  Priority claim --

23         MR. CURTIN:  Of the IRS.

24         MR. DONOVAN:  Your Honor, it's completely estimated

25 because the debtor never filed any tax returns.

1           THE COURT:  But not --

2           MR. DONOVAN:  It's a number that the IRS kicked out

3  of the hat.

4           THE COURT:  It's an unsecured priority claim.

5           MR. DONOVAN:  It's an unsecured priority claim and if

6  the number --

7           THE COURT:  Do they go against Mr. Nelkenbaum for

8  this?  Is this --

9           MR. DONOVAN:  Yes, Your Honor.  I believe these are

10  also Chapter S companies.  Mr. Nelkenbaum will have to deal

11  with that and that's why he's working on the tax returns.  And

12  what I'm looking for and what I -- perhaps I simply said it too

13  forcefully but what I'm looking for is the opportunity to

14  rewrite the papers so that it lays all of this out as we've

15  discussed it today and they'll have the opportunity to come in

16  on the 5th and either say now that we see all the numbers and

17  we see where we are, we're ready to go forward or they'll say

18  and Your Honor will have to make a decision.

19           THE COURT:  So what you're saying is that the only

20  purpose of doing this is to take advantage of the opportunity

21  to market the property yourself which you would have in a

22  Chapter 11 case and would not have in the context of a

23  foreclosure action.

24           MR. DONOVAN:  That's the primary benefit, Your Honor.

25           THE COURT:  Is there any other benefit?

1          MR. DONOVAN:  There's a transfer tax benefit.

2    There's the opportunity for the debtor to challenge the amount

3    that is sought in these claims which would not otherwise be

4    available outside of this court.  I believe it's safer to have

5    a judgment but I don't believe that a judgment in New York Spot

6    --

7          THE COURT:  Well, if they have a judgment --

8          MR. DONOVAN:  But there are issues here, Your Honor,

9    that we think are worth pursuing at least through October 5th

10   and when we come back with all of our ducks in a row we'll see

11   where we are.

12         THE COURT:  All right.  Well, there's no motion to

13   dismiss on right now anyway so I guess that I'll adjourn this

14   to the 5th.

15         MR. DONOVAN:  And I assume Mr. Curtin's comments from

16   the other case apply to this one as well.

17         MR. DELL'AMORE:  I'd just like to add that on the 5th

18   we're going to support Mr. Curtin's motion and we're probably

19   going to be filing our own motion as well and make it

20   returnable that day.  I've already received permission to make

21   a motion on that day.

22         THE COURT:  Let me ask you what's your client's

23   objection to the debtor selling the property in the context of

24   a Chapter 11 case assuming you got the credit bid?

25         MR. DELL'AMORE:  Well --

1              THE COURT:  Why would you prefer to go through the

2    foreclosure route?

3              MR. DELL'AMORE:  There's multiple reasons.  First of

4    all, coming in today we thought that our credit bid was limited

5    and we thought that the personal liability of the guarantor

6    would be extinguished.

7              THE COURT:  Well, I completely understand that.

8              MR. DELL'AMORE:  But that's not the case.

9              THE COURT:  Assuming that's not the case?

10             MR. DELL'AMORE:  Then the objection is that we have

11   to pay their attorneys and we have to pay their priority claims

12   and we have to pay their quarterly fees.

13             THE COURT:  Well why on earth would you ever do that?

14             MR. DELL'AMORE:  I agree.  That's why --

15             MR. DONOVAN:  And Your Honor, why on earth they would

16   do it is because it might turn out that it's substantially

17   cheaper than it is going forward.

18             THE COURT:  Cheaper for them?

19             MR. DONOVAN:  Cheaper for them than going forward

20   outside of this Court trying to sell the property.  Maybe it

21   isn't and we'll have discussion, we'll work out what we can.

22   It may be --

23             THE COURT:  Well, if a disclosure judgment --

24             MR. DONOVAN:  -- that Mr. Nelkenbaum is willing to

25   pay those payments that he has to to confirm the plan because

1  he thinks he can get more money at a sale.  We'll have to have

2  that discussion.

3          MR. DELL'AMORE:  We're on the eve of foreclosure.

4  That's why this case was filed so we're right there.

5          THE COURT:  Okay.  10/6.

6          MR. DELL'AMORE:  Can I have just one more

7  administrative minute?  I do have a motion on to keep the

8  receiver in place.  I'm not sure if [unintelligible].  I know

9  he referenced it.  I just want to make clear that's being

10 adjourned.

11         THE COURT:  And you're stipulating to that?

12         MR. DONOVAN:  Right.  And carrying that motion to

13 October 5th and in the interim keeping the receiver in place.

14         THE COURT:  Okay.  Let's see, is that stipulation on

15 file here?

16         MR. DONOVAN:  Yes.

17         MR. DELL'AMORE:  It's on the docket, yeah.

18         THE COURT:  Okay.  I guess that stipulation is not on

19 the docket for today, on the calendar today.

20         MR. DELL'AMORE:  It is on the docket.

21         THE COURT:  Oh yes, here it is.  Okay.  So I'll

22 adjourn this to 10/5 and I'll note the receiver is authorized

23 to remain in place pending the hearing on this motion.

24         MR. DELL'AMORE:  Thank you.

25         THE COURT:  Okay.  So let's go on to -- is New York -

1  – what would be the next one?

2          MR. DONOVAN:  New York Double.

3          THE COURT:  New York Double?

4          MR. DONOVAN:  Your Honor, this is one where we have

5  made a deal with the lender.  We have a stipulation that has

6  been drafted that will have the receiver taken out and he's

7  going to turn over the funds that he's holding to the debtor

8  and then once that's done, and I expect to have that in the

9  next couple of days, it is our intention to dismiss the case.

10  Mr. Curtin has made a motion to dismiss on October 5th.  So

11  what we'd like to do is come back on October 5th by which time

12  we'll be ready to accede to that suggestion of dismissal.

13          THE COURT:  All right.  That's fine.

14          MR. DONOVAN:  And in the meantime we should have a

15  stipulation submitted to chambers within the next few days.

16          THE COURT:  So now let's talk about Martense.

17          MR. ROSENBLOOM:  Good afternoon, Your Honor.

18          THE COURT:  Good afternoon.

19          MR. ROSENBLOOM:  In Martense, Your Honor, there have

20  been some very favorable turns of events since we were last

21  here.  First, the New York Community Bank Mortgage has been

22  purchased by a third party who has expressed a willingness to

23  work with us to facilitate sale of the property.  Along with

24  that, Judge, we are finalizing a contract of sale to sell the

25  property to Mr. Weston's client subject to higher and better

1  bids.  And one --

2          THE COURT:  And what's the sales price?

3          MR. ROSENBLOOM:  $6,400,000.00.

4          THE COURT:  And what's the amount of the claim?  I

5  guess we're calling it the secured claim.

6          MR. WESTON:  Approximately 4.8.

7          MR. ROSENBLOOM:  No, it's approximately, with

8  interest and charges, it's approximately 5.3.

9          THE COURT:  And other creditors on the case.

10          MR. ROSENBLOOM:  There are other secured creditors.

11  There are unsecured creditors and the plan is of course going

12  to provide the sale is subject to higher and better bids and we

13  will be presenting to Your Honor bidding procedures coupled

14  with an order scheduling a hearing to consider the sale subject

15  to higher and better bids and subject to a breakup fee and

16  fairly detailed bid procedures typical of what the Court

17  approves.

18          We'll be coupling that with a liquidated plan and we

19  would intend to have an auction and to run the auction

20  coincident with confirmation of the case.

21          THE COURT:  And how is this going to -- you've got a

22  $6 million sales price, at least that's --

23          MR. WESTON:  6.4.

24          MR. ROSENBLOOM:  6.4.

25          THE COURT:  $6.4 million.  Okay.  6.4, 5.8 of the

1    secured claim.  The second lien is how much?

2             MR. ROSENBLOOM:  The second lien is 300.

3             THE COURT:  Is 300.  So what would you have to pay at

4    confirmation to achieve confirmation?  You have to pay

5    administrative expenses?

6             MR. ROSENBLOOM:  Right.  The debtor has funds

7    available which will be used to pay administrative expenses.

8             THE COURT:  How do they have funds available in

9    excess of the mortgage payment that you've been making?

10            MR. ROSENBLOOM:  Right.  Yes.

11            THE COURT:  Have you been continuing to make the post

12   petition payments?

13            MR. ROSENBLOOM:  The mortgagee has allowed us not to

14   make those payments; however, we have made the tax payment

15   which fell due in July.  And the mortgagee has also indicated a

16   willingness to carve out money from its mortgage so that there

17   is a fund available for unsecured creditors and has also

18   expressed a willingness to make monies available to the extent

19   as it might be needed to facilitate confirmation.  We have a

20   whole different tenet of the case.

21            THE COURT:  Okay.  So just thinking through whether

22   you, you know, what you have to do to achieve confirmation, you

23   have to have enough to pay the secured claims except to the

24   extent that they degree to take less, and you have to have

25   enough to pay the administrative claims.

1          MR. ROSENBLOOM:  Right.  And we'll have the funds

2    available, we will have a fund available for unsecured

3    creditors as well.

4          THE COURT:  And how much is the second lienholder

5    that applies on all of these properties?

6          MR. ROSENBLOOM:  $300,000.00.

7          THE COURT:  You might be able to, you might not.  So

8    you're filing an amended plan and disclosure statement?

9          MR. ROSENBLOOM:  Yes, ma'am.

10          THE COURT:  And when will that be done?

11          MR. ROSENBLOOM:  That will be done almost coincident

12    with our finalizing our contract of sale.

13          MR. WESTON:  I would expect the contract of sale to

14    be finalized within the next day or two.  There is some

15    language issues.  There's one substantive issue which is not a

16    deal killer, so I would expect that to be done.

17          THE COURT:  What are you looking for by way of a

18    breakup fee?

19          MR. WESTON:  $175,000.00 which is less than 3%.

20          MR. ROSENBLOOM:  We're contemplating minimum bids,

21    additional bids of $50,000.00.

22          THE COURT:  Did you have anything you wanted to --

23          MR. CURTIN:  I did, Your Honor.  The only thing I

24    wanted to add is -- well first of all, we have a motion to

25    dismiss in this case that's on on the 5th also.  What I haven't

1 heard mentioned in this case is the fact that the tax returns

2 also haven't been filed in this case.  Right now as it stands

3 we have priority claims of almost a quarter million and if the

4 property is going to be sold it doesn't seem like a situation

5 where it's going to be able to be paid over time.  So I don't

6 know what the intent is on that.  I don't know whether they're

7 assuming that that's going to come down to zero or come down to

8 a more manageable number but as it stands right now, that's

9 what's filed and those are I believe all tax claims.

10          MR. ROSENBLOOM:  If I can respond to that, Judge,

11 they are priority tax claims, they're all estimated.  And our

12 understanding is that the amount that is owed is truly minimal.

13 I expect that I will have those tax returns prepared and filed

14 by the end of the month.

15          THE COURT:  Okay.  So if I put this over to 10/5 will

16 you at that point -- what I would like is for you to file your

17 amended plan and disclosure statement by then.  You're going to

18 bring in a bid procedures order --

19          MR. ROSENBLOOM:  By then.

20          THE COURT:  -- in advance of that?

21          MR. ROSENBLOOM:  No.  We'll be submitting it along

22 with the plan.  We expect to have it all done just about the

23 same time.

24          MR. WESTON:  But sooner than October 5th.  I would

25 like to see the bid procedures and the breakup fee order as

1  soon as possible.

2          THE COURT:  That's going to have to be done on

3  notice.  Yes.

4          MR. ROSENBLOOM:  Correct.

5          MR. CURTIN:  Your Honor, one way that we've done it

6  in the past is that the bid procedures will be in the context

7  of the disclosure statement because we need entirely new

8  documents.  The old documents are meaningless at this point so

9  the bid procedures could be incorporated in the disclosure

10  statement we can raise any objections and do it that way.  In

11  other words, the bid procedures can be an exhibit to the

12  disclosure statement.

13          THE COURT:  Well, I suppose the disclosure statement

14  is going to have to disclose what the bid procedures are but I

15  think you want them approved before the disclosure statement is

16  approved; don't you?  You don't want to wait till confirmation.

17          MR. ROSENBLOOM:  Correct.

18          MR. CURTIN:  Correct.

19          THE COURT:  So why don't you bring on a motion for

20  approval of the bid procedures for October 5th.  Is that all

21  right?

22          MR. WESTON:  That's fine.  If we can do it sooner,

23  we'll do that too.

24          THE COURT:  All right.

25          MR. ROSENBLOOM:  Okay.  We're close.  We're fine.

1   We'll do what we can to get it done, Judge.

2           THE COURT:  Okay.  Anything else?

3           MR. ROSENBLOOM:  No, ma'am.

4           MR. WESTON:  Judge, thank you very much.

5           THE COURT:  Okay.

6           MR. CURTIN:  Thank you, Your Honor.

7                         *  *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                          _____

6                                  Mary Greco

7   Dated:   September 22, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25